UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 06-180 |
| FRANK ROBINSON, | : | |
| Defendant. | : | |

FILED
JUL 1 8 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF THE OFFENSE

Pursuant to Fed.R.Cr.P. 11, defendant FRANK ROBINSON agrees and stipulates as follows:

1. At all relevant times herein, FRANK ROBINSON was an Inspector for the District of Columbia Department of Transportation, Public Space Management Administration, Office of Infrastructure Oversight (hereinafter referred to as "OIO"). ROBINSON was a full-time employee of the District of Columbia government.

2. At all relevant times herein, OIO Inspectors were charged with the responsibility of investigating and initiating enforcement actions in cases of work performed without a permit in all publicly owned property including roadways, tree spaces, sidewalks and alleys. As part of his official acts, ROBINSON was empowered by the District of Columbia government to issue citations to individuals who failed to obtain a permit as required by law.

3. At all relevant times herein, CW1 was a contractor who purchased and rehabilitated homes for resale in the District of Columbia and elsewhere.

4. At all relevant times herein, CW2 was a plumber who occasionally worked as a subcontractor for CW1 in the District of Columbia.

5. In or about November 2004, CW1 was rehabilitating a home located in the unit

block of Uhland Terrace, N.E., Washington, D.C., and CW2 was working as a subcontractor plumber on that project. In an effort to connect the house on Uhland Terrace to the District of Columbia main water line beneath the street, CW2 dug a ditch from the house through the city sidewalk to the street. Before he dug in publicly owned property, CW2 was required to obtain a permit. However, the application for a permit that CW2 had submitted to the District of Columbia government was still pending at the time that he dug through the city sidewalk.

6. After CW2 dug through the sidewalk, ROBINSON arrived on the job scene in the unit block of Uhland Terrace, purportedly in response to a citizen complaint that an electrical line to a streetlight pole had been cut near the job site. When ROBINSON discovered that CW2 had not yet obtained a permit to dig in publicly owned property, he told both CW1 and CW2 that they were subject to a fine. Thereafter, ROBINSON said words to the effect that he could make the problem go away for CW1 and CW2 if he was paid money.

7. On or about April 26, 2006, during a telephone conversation between CW2 and ROBINSON, CW2 told ROBINSON about a new construction project that he was involved with in the 1000 block of Rhode Island Avenue, N.W., Washington, D.C. CW2 told ROBINSON that his plumbing permit had expired. CW2 also told ROBINSON that he did not want anyone to come by to "piss on" his job, to which ROBINSON responded "all right."

8. During a telephone conversation between CW2 and ROBINSON on or about May 4, 2006, ROBINSON told CW2 that he owed him for "watching" his job site. The following is an excerpt from the conversation on or about May 4, 2006:

> *CW2: I don't want this to come back to haunt me.*
>
> *Robinson: You already in my books now, you know you already owe, so I*

> *been watching it for you, how much more time you need?*
>
> ***CW2:*** *I need about two more weeks baby, you know what I'm saying?*
>
> ***Robinson:*** *You gonna owe me big time, you gonna owe me big time.*
>
> ***CW2:*** *When I meet you, when I see you, what do you want me to have for you?*

\*   \*   \*

> ***Robinson:*** *Okay, I'll tell you what, we'll talk face to face when you come in town in two weeks. I'll watch it for now, okay?*
>
> ***CW2:*** *Yeah, keep that under wraps for me because I really don't want this man calling me and bothering me*
>
> ***Robinson:*** *All right.*

9. According to CW2, on or about May 13, 2006, ROBINSON telephoned CW2 and asked about the construction site in the 1000 block of Rhode Island Avenue. ROBINSON also told CW2 that he wanted money. CW2 replied that he would call ROBINSON on Monday, May 15, 2006.

10. On or about May 15, 2006, during a meeting between CW2 and ROBINSON near the job site in the 1000 block of Rhode Island Avenue, the two men discussed the expired plumbing permit at the job site. ROBINSON indicated that he wanted payment in exchange for ensuring that CW2 did not get a $2,500 fine. The following is an excerpt from the conversation of on or about May 15, 2006:

> ***Robinson:*** *You want your permit right away, right?*
>
> ***CW2:*** *Damn right I want my permit.*

\*   \*   \*

>*Robinson:* You need to love me baby, you need to love me.

\*   \*   \*

>*Robinson:* I did my part, you didn't get no fines or anything.
>
>*CW2:* Give me a price, I got to talk to my people about money, I just came back in town, tell me how much.
>
>*Robinson:* What you think man? If you had somebody had to watch something so you don't get a $2,500 ticket?
>
>*CW2:* Frank, I need a price.
>
>*Robinson:* Give me $500.

11. On or about May 19, 2006, CW2 telephoned ROBINSON and arranged to meet with him on Monday May 22, 2006, at a restaurant in Northeast, Washington, D.C.

12. On May 22, 2006, a meeting occurred between CW2 and ROBINSON in the parking lot of the agreed upon restaurant in Northeast, Washington, D.C. At the time of this meeting, CW2 was carrying a white envelope that contained $500 in cash.

13. CW2 told ROBINSON that if he gave him the white envelope, he did not want anyone bothering him at his job site. In response, ROBINSON asked CW2: "Has anybody bothered you yet? What are you talking about?" ROBINSON then received the envelope from CW2 and asked "what's this, cash?" CW2 responded "yeah baby." Thereafter, ROBINSON got in his car with the envelope.

14. After CW2 gave ROBINSON the white envelope containing $500 in cash, ROBINSON was stopped by Special Agents with the Federal Bureau of Investigation ("FBI"). At the time he was stopped, the white envelope containing $500 was on the front seat of ROBINSON'S car.

15. During an interview following his arrest, ROBINSON admitted to Special Agents with the FBI that he knew the envelope that CW2 had given him contained cash. He further acknowledged that he had accepted the cash payment in exchange for keeping other city inspectors away from CW2's job site in the 1000 block of Rhode Island Avenue.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia

By: _____
DAVID CAREY WOLL, JR.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-4250

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 7-18-06

Frank Robinson
Defendant

I have discussed this Statement of Offense with my client, Mr. Robinson. I concur with his decision to stipulate to this Statement of Offense.

Date: 7/18/06

Joseph Conte, Esq.
Counsel for the Defendant