UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 06-180 (HK) |
| : | |
| FRANK ROBINSON, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits the following memorandum in aid of sentencing in the above-captioned case. For the reasons set forth herein, the government respectfully recommends that the Court impose a sentence at the low end of the Guidelines range of 12 to 18 months.

**I.   BACKGROUND**

On July 18, 2006, defendant Frank Robinson pled guilty to a one-count felony information charging him with Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(2)(A). During his plea colloquy Mr. Robinson admitted that while he was a full-time employee of the District of Columbia government he accepted a $500 bribe.

In July 2005, Mr. Robinson was an Inspector for the District of Columbia Department of Transportation, Public Space Management Administration, Office of Infrastructure Oversight (hereinafter referred to as "OIO"). OIO Inspectors were responsible for investigating and initiating enforcement actions in cases of work performed without a permit in all publicly owned property including roadways, tree spaces, sidewalks and alleys. As part of his official acts, Mr. Robinson was empowered by the District of Columbia government to issue citations to persons who failed to obtain a permit as required by law.

In or about November 2004, CW1, a contractor, was rehabilitating a home located in the unit block of Uhland Terrace, N.E., Washington, D.C. CW2, a plumber, was working as a subcontractor on that project. In an effort to connect the house on Uhland Terrace to the District of Columbia main water line beneath the street, CW2 dug a ditch from the house through the city sidewalk to the street. Before he dug in publicly owned property, CW2 was required to obtain a permit. However, the application for a permit that CW2 had submitted to the District of Columbia government was still pending at the time that he dug through the city sidewalk.

After CW2 dug through the sidewalk, Mr. Robinson arrived on the job scene in the unit block of Uhland Terrace, purportedly in response to a citizen complaint that an electrical line to a streetlight pole had been cut near the job site. When Mr. Robinson discovered that CW2 had not yet obtained a permit to dig in publicly owned property, he told both CW1 and CW2 that they were subject to a fine. Thereafter, Mr. Robinson said words to the effect that he could make the problem go away for CW1 and CW2 if he was paid money.

On or about April 26, 2006, during a telephone conversation between CW2 and Mr. Robinson, CW2 told Mr. Robinson about a new construction project that he was involved with in the 1000 block of Rhode Island Avenue, N.W., Washington, D.C. CW2 told Mr. Robinson that his plumbing permit had expired. CW2 also told Mr. Robinson that he did not want anyone to come by to "piss on" his job, to which Mr. Robinson responded "all right."

During a telephone conversation between CW2 and Mr. Robinson on or about May 4, 2006, Mr. Robinson told CW2 that he owed him for "watching" his job site. The following is an excerpt from the conversation on or about May 4, 2006:

> ***CW2:*** *I don't want this to come back to haunt me.*

> *Mr. Robinson:* *You already in my books now, you know you already owe, so I been watching it for you, how much more time you need?*
>
> *CW2:* *I need about two more weeks baby, you know what I'm saying?*
>
> *Mr. Robinson:* *You gonna owe me big time, you gonna owe me big time.*
>
> *CW2:* *When I meet you, when I see you, what do you want me to have for you?*

\*       \*       \*

> *Mr. Robinson:* *Okay, I'll tell you what, we'll talk face to face when you come in town in two weeks. I'll watch it for now, okay?*
>
> *CW2:* *Yeah, keep that under wraps for me because I really don't want this man calling me and bothering me*
>
> *Mr. Robinson:* *All right.*

On or about May 13, 2006, Mr. Robinson telephoned CW2 and asked about the construction site in the 1000 block of Rhode Island Avenue. Mr. Robinson also told CW2 that he wanted money. CW2 replied that he would call Mr. Robinson on Monday, May 15, 2006. Thereafter, on or about May 15, 2006, during a meeting between CW2 and Mr. Robinson near the job site in the 1000 block of Rhode Island Avenue, the two men discussed the expired plumbing permit at the job site. Mr. Robinson indicated that he wanted payment in exchange for ensuring that CW2 did not get a $2,500 fine. The following is an excerpt from the conversation of on or about May 15, 2006:

> *Mr. Robinson:* *You want your permit right away, right?*
>
> *CW2:* *Damn right I want my permit.*

\*       \*       \*

> *Mr. Robinson:* *You need to love me baby, you need to love me.*

\*       \*       \*

> *Mr. Robinson:* I did my part, you didn't get no fines or anything.
>
> *CW2:* Give me a price, I got to talk to my people about money, I just came back in town, tell me how much.
>
> *Mr. Robinson:* What you think man? If you had somebody had to watch something so you don't get a $2,500 ticket?
>
> *CW2:* Frank, I need a price.
>
> *Mr. Robinson:* Give me $500.

On or about May 19, 2006, CW2 telephoned Mr. Robinson and arranged to meet with him on Monday May 22, 2006, at a restaurant in Northeast, Washington, D.C. Thereafter, on May 22, 2006, a meeting occurred between CW2 and Mr. Robinson in the parking lot of the agreed upon restaurant in Northeast, Washington, D.C. At the time of this meeting, CW2 was carrying a white envelope that contained $500 in cash.

CW2 told Mr. Robinson that if he gave him the white envelope, he did not want anyone bothering him at his job site. In response, Mr. Robinson asked CW2: "Has anybody bothered you yet? What are you talking about?" Mr. Robinson then received the envelope from CW2 and asked "what's this, cash?" CW2 responded "yeah baby." Thereafter, Mr. Robinson got in his car with the envelope.

After CW2 gave Mr. Robinson the white envelope containing $500 in cash, Mr. Robinson was stopped by Special Agents with the Federal Bureau of Investigation ("FBI"). At the time he was stopped, the white envelope containing $500 was on the front seat of Mr. Robinson's car.

During an interview following his arrest, Mr. Robinson admitted to Special Agents with the FBI that he knew the envelope that CW2 had given him contained cash. He further acknowledged

that he had accepted the cash payment in exchange for keeping other city inspectors away from CW2's job site in the 1000 block of Rhode Island Avenue.

**II.    SENTENCING CALCULATION**

    A    Statutory Maximum

Defendant pled guilty to one count of Bribery of a Public Official, in violation of Title 18, United States Code, Section 201(b)(2)(A). The maximum sentence for this offense is fifteen years imprisonment, a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, and a three year term of supervised release.

    B.    Sentencing Guideline Calculation

Both parties agreed to the Guidelines calculations utilized in the Presentence Report ("PSR"), which correctly calculates defendant's total offense level at 12. See PSR ¶ 29. This includes the base offense level of fourteen (§ 2C1.1(a)(1)). Moreover, pursuant to the plea agreement, the government agreed not to oppose a two point reduction for acceptance of responsibility, which yields a total offense level of 12. The PSR also correctly lists defendant's criminal history as Category II. See PSR ¶ 44. Therefore, the guideline range for defendant is correctly calculated in the PSR as 12-18 months. See PSR ¶ 98. Pursuant to paragraph 3 of the plea agreement, the parties agree not to seek any adjustments or departures from this offense level.

    C.    Restitution

The plea agreement provides that defendant will pay restitution to his victims. In this case, there is no need for restitution because the FBI recovered the money that was paid to Mr. Robinson as a bribe.

    D.    Prior Criminal History

As noted above, defendant has a criminal history score of two points. See PSR ¶ 44. Defendant has at least thirteen prior convictions. All but one of these convictions, a simple assault in 1998, date back at least fifteen years. See PSR ¶¶ 31-43.

## III.   CONCLUSION

Defendant is facing 12 to 18 months under the (now advisory) Federal Sentencing Guidelines. The government submits that it would be reasonable for the Court to sentence defendant to a period of incarceration at the low end of the Guidelines range.

To his credit, defendant entered a pre-indictment plea in this case and has accepted full responsibility for his actions. Although defendant has an adult criminal history dating back to 1982, almost all of these offenses occurred more than fifteen years ago. Dating back to 1995, Mr. Robinson has also shown a willingness to work and support himself and his wife. Thus, the government respectfully requests that this Court impose a sentence at the low end of the Guidelines range of 12 to 18 months incarceration.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
DAVID CAREY WOLL, JR.
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-4250